IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

SYDNEY L. GRAHAM,                    )
                                     )
      Plaintiff,                     )
                                     )
v.                                   )   No. 05-2544 Ml/V
                                     )
NORMAN Y. MINETA, SECRETARY,         )
DEPARTMENT OF TRANSPORTATION,        )
                                     )
      Defendant.                     )
_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

      Before the Court is Defendant Norman Y. Mineta's Motion for
Summary Judgment, filed April 21, 2006.  Plaintiff Sydney L.
Graham submitted his Response to Defendant's Motion for Summary
Judgment on May 11, 2005.  Plaintiff commenced this action on
March 16, 2005, in the United States District Court for the
Northern District of Georgia, Atlanta Division.  The case was
transferred to this Court on August 1, 2005.  For the following
reasons, the Court GRANTS Defendant's Motion for Summary
Judgment.

I.  Factual Background

      This case arises out of the conduct and termination of
Plaintiff Sydney Graham's ("Plaintiff's") training in 2001 at
Defendant's Federal Aviation Administration ("FAA") facility in
Memphis.  Plaintiff, who is black, is currently a Traffic

Controller Specialist with the FAA at the Jacksonville Center in Hilliard, Florida.  (Pl. Dep., taken March 7, 2006, Doc. 61, Attach. 1, at 9-10.)

In 1992, Plaintiff was hired by the FAA on a full time basis to work at the Jacksonville FAA facility in Hilliard, Florida.  Id. at 15.  He was promoted to the position of Certified Professional Controller in November 1996.  He was again promoted to Traffic Management Coordinator in 2000.  Id. at 20.  He received awards for his job performance between 1994 and 2001.  (Ex. 1., Doc. 61, Attach. 4, at 2.)

In 2001, Plaintiff was selected for the professional training program, the program at issue in this cause, at the Memphis FAA facility.  (Pl. Dep., Doc. 61, Attach. 2, at 111-112).  He was also promoted, contingent upon successful completion of the training program.  (Exs. 3 and 6., Doc. 61, Attach. 4, at 6-7, 14.)

Plaintiff alleges that the white trainees, Amy Wright, Gary Porta, and Rob Naylor, who were new or "developmental" trainees, received more hours of training and fewer restrictions on the kind of training exercises they performed.  (Pl. Decl., May 11, 2006, Doc. 68-4, at 2-3.)  All the white trainees successfully completed the training.  Id. at 3.  The Review Board considered the trainers' determinations in deciding whether a trainee

- 2 -

should be certified.  (Pl. Decl., May 11, 2006, Doc. 68-4, at

5.)  The four members of the Review Board were all white.  Id.

     As a result of the trainers' recommendations and the Review

Board's decision pursuant to those recommendations, Defendant

demoted Plaintiff to his previous position.  (Pl. Dep., Doc. 61,

Attach. 3, at 269.)  Upon returning to Jacksonville, Plaintiff

quickly re-certified as an Air Traffic Controller.  Id. at 289,

293.  Plaintiff alleges that his trainers and the Review Board

discriminated against him and that he suffered harassment based

on race.[1]

## II.  Standard of Review

     Under Federal Rule of Civil Procedure 56(c), summary

judgment is proper, "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  So long as

the movant has met its initial burden of "demonstrat[ing] the

absence of a genuine issue of material fact," Celotex, 477 U.S.

at 323, and the nonmoving party is unable to make such a

---

     [1] Plaintiff originally included in his complaint allegations of
discrimination and harassment based on his gender.  Plaintiff's
Response to Defendant's Motion for Summary Judgment argues only that
the discrimination was based on his race.  The Court therefore regards
the gender-based claims as abandoned.

showing, summary judgment is appropriate.  Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989).  In considering a motion for summary judgment, however, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion."  Kochins v. Linden-Alimak, Inc.,799 F.2d 1128, 1133 (6th Cir. 1986), *reh'g denied*; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998), *reh'g and reh'g en banc denied*.  A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

**III.  Analysis**

Plaintiff alleges both discrimination and harassment based on race.  Defendant moves for summary judgment as to each claim.

For the following reasons, the Court GRANTS Defendant's motion
as to both claims.

## A.  Racial Discrimination

Title VII makes it unlawful for an employer to
"discriminate against any individual with respect to his
compensation, terms, conditions, or privileges of employment
because of such individual's race, color, religion, sex, or
national origin."  42 U.S.C. § 2000e-2(a)(1).  Plaintiff may
establish a prima facie case of race discrimination under Title
VII through direct evidence or through circumstantial evidence
under the McDonnell Douglas burden-shifting paradigm.  See Kline
v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997), *reh'g
and reh'g en banc denied*; see also McDonnell Douglas Corp. v.
Green, 411 U.S. 792, 803 (1973).  Because the Plaintiff has
alleged only indirect evidence to support his claim of
discrimination, his claim is analyzed under the McDonnell
Douglas framework.

Under the McDonnell Douglas analysis, a plaintiff must
first make out a prima facie case of discrimination by showing
that (1) he is a member of a protected group; (2) he was subject
to an adverse employment action; (3) he was qualified for the
position; and (4) similarly-situated non-protected employees
were treated more favorably.  Kline, 128 F.3d at 348 (applying
the burden-shifting method to gender and racial discrimination

cases); see also McDonnell Douglas, 411 U.S. at 803.  Defendant argues that Plaintiff has failed to demonstrate a genuine issue of material fact as to the third and fourth elements.[2]  For the following reasons, the Court finds that Plaintiff has properly demonstrated a genuine issue of material fact as to the third element but does the Court does not decide as to the fourth element.

Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.  Texas Dep't of Cmty Affairs v. Burdine, 240 U.S. 248, 254-56 (1981); Talley, 61 F.3d at 1246.  If the defendant offers a legitimate, nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to show that the proffered reason is a pretext for discrimination.  McDonnell Douglas, 411 U.S. at 804-05.  The ultimate burden of persuasion always remains with the plaintiff.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).  For the following reasons, the Court finds that Defendant has properly offered a legitimate non-discriminatory reason, and Plaintiff has failed to demonstrate that that reason is pretextual.  The Court therefore GRANTS Defendant's Motion for Summary Judgment.

---

[2] The first and second elements are not in dispute.  Plaintiff has alleged that he is black, and his training was terminated and his promotion rescinded.

### 1.  Prima Facie Case

Defendant contends that Plaintiff has not made out a prima facie case because Plaintiff has not satisfied the third and fourth elements.  For the following reasons, the Court finds that Plaintiff has satisfied the third element, demonstrating that he was qualified for the position.  The Court also finds it unnecessary to determine whether Plaintiff has satisfied the fourth element, as the Court grants the motion on other grounds.

### a.  Qualified for the Position

Defendant contends that Plaintiff has not made out a prima facie case because Plaintiff has not pointed to evidence that can prove that he was qualified for the position.[3]  Specifically, Defendant contends that "Plaintiff's training records are replete with examples of mistakes on his part, and his supervisors' and trainers' concerns about his performance." (Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def. Mem."), April 21, 2006, Doc. 63-2, at 9.)  Defendant then cites numerous mistakes and poor evaluations.  Id. at 9-11.

The Court may not consider these alleged mistakes and poor evaluations, however, in determining whether Plaintiff was

---

[3] Defendant, citing Burdine, describes this element of the prima facie case as requiring that Plaintiff show that "[h]e was performing his duties in a satisfactory manner."  (Def. Mem., Doc. 63-2, at 9.) This is incorrect.  Rather, "[t]he plaintiff must prove by a preponderance of the evidence that [he] applied for an available position *for which [he] was qualified*.  Burdine, 450 U.S. at 253 (emphasis added).

qualified for the position or training.  The Sixth Circuit has
held that "a court may not consider the employer's alleged
nondiscriminatory reason for taking an adverse employment action
when analyzing the prima facie case.  To do so would bypass the
burden-shifting analysis and deprive the plaintiff of the
opportunity to show that the nondiscriminatory reason was in
actuality a pretext designed to mask discrimination."  Wexler v.
White's Fine Furniture, Inc., 317 F.3d 564, 574-75 (6th Cir.
2003) (citing Cline v. Catholic Diocese of Toledo, 206 F.3d 651,
660-61 (6th Cir. 2000) ("[W]hen assessing whether a plaintiff
has met her employer's legitimate expectations at the prima
facie stage of a termination case, a court must examine
plaintiff's evidence independent of the nondiscriminatory reason
'produced' by the defense as its reason for terminating
plaintiff.")).  Rather,

> [a]t the prima facie stage, a court should focus on a
> plaintiff's *objective* qualifications to determine
> whether he or she is qualified for the relevant job.
> The prima facie burden of showing that a plaintiff is
> qualified can therefore be met by presenting credible
> evidence that his or her qualifications are at least
> equivalent to the minimum objective criteria required
> for employment in the relevant field.  Although the
> specific qualifications will vary depending on the job
> in question, the inquiry should focus on criteria such
> as the plaintiff's education, experience in the
> relevant industry, and demonstrated possession of the
> required general skills.

Wexler, 317 F.3d at 575-76 (internal citations omitted)
(emphasis in original).  Therefore, in determining whether

Plaintiff has shown that he was qualified for the position, the Court does not consider the alleged mistakes that form the basis for Defendant's proffered legitimate non-discriminatory reason for not certifying Plaintiff's successful completion of training.

Plaintiff has pointed to evidence that he was qualified for the training program and the promotion that was contingent upon successful completion of the training. He had over a dozen years of experience in the industry itself and was considered so valuable that he was paid moving costs and other expenses (totaling $27,000) so that Defendant could obtain his skills and experience. (Hoyer's Decl., Doc. 63-2, Attach. 1, at 2.) He had applied for the training and was accepted. He had won numerous awards for his performance in Jacksonville, demonstrating possession of the required general skills. Plaintiff has demonstrated that a genuine issue of material fact exists as to whether his qualifications were at least equivalent to the minimum objective criteria required for employment.

### b.   Similarly Situated Non-Protected Employees Treated More Favorably than Plaintiff

Defendant also argues that Plaintiff has failed to satisfy the fourth element of the prima facie case because he fails to point to similarly-situated non-protected coworkers who were treated more favorably. The Sixth Circuit has held that to be

deemed "similarly-situated", the nonprotected employees "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992); see also Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994) ("The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances."). However, Plaintiff "need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;' rather . . ., [they] must be similar in all of the relevant aspects." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (internal quotations omitted) (emphasis in original).

Defendant contends that the other trainees were not similarly situated because Plaintiff transferred from another facility and was not a new trainee, "the training requirements for developmentals [or trainees without prior experience] and . . . transfers [those with prior experience] are different." (Def. Mem., Doc. 63-2, at 12.) Defendant cites Plaintiff's deposition for the assertion that the training programs were different.

Notwithstanding this assertion, Plaintiff did not testify at his deposition that the programs were substantially different, but rather that "[a]s far as I can ascertain from the FAA documents, the *only thing that's different* is the allotted hours." (Pl. Dep., Doc. 61, Attach. 3, at 266) (emphasis added). All trainees, regardless of experience, would be trained and evaluated to the same standard, with the exception of a few extra training hours for "developmental," or inexperienced, trainees. Defendant does not assert that Plaintiff's prior experience in the field required a more stringent evaluation of his performance during training.

Plaintiff presents minimal evidence that the other trainees, who were all inexperienced trainees, were similarly situated to Plaintiff. Nor does he offer other evidence, aside from his deposition statement, that the training programs should be the same for both experienced and inexperienced (developmental) trainees.[4] It is Plaintiff's burden to point to evidence satisfying this element of the prima facie showing.

---

[4] Plaintiff also cites to the FAA Air Traffic Control Training Manual's definition of "developmental" as it applies to new trainees: "An air traffic control specialist (ATCS) in any option who has not achieved full performance level (FPL) for the facility/area to which assigned." (See Pl.'s Resp. to Def.'s Mot. for Summ. J. and Mem. of Law in Supp. Thereof ("Pl. Resp."), May 11, 2006, Doc. 68-1, at 13.) Plaintiff argues that "both CPC transfers and new developmental trainees . . . fall under the definition of 'developmental.'" Id. at 13. Both categories of trainees have not yet achieved FPL "for the facility/area to which assigned," and were "attempting to achieve
(continued . . .)

However, the Court need not determine whether the variant in prior experience and the extra hours allotted to new trainees require a finding that the other trainees were not similarly situated, as the Court finds that Defendant's summary judgment motion succeeds on other grounds, discussed <u>infra</u>.[5]

## 2.  Legitimate Non-Discriminatory Reason

Defendant asserts that even if Plaintiff does satisfy the prima facie requirements, Defendant has presented a legitimate non-discriminatory reason for the termination of the training. Specifically, Defendant cites the Training Review Board's decision:

> [Plaintiff's] ability to keep up with moderate or greater traffic was a major stumbling block to his success.  It was brought out by his OJTIs that when the traffic got above the moderate level, the separation, wrong call signs, and coordination errors would increase.  One of his OJTIs stated that during one OJT session, [Plaintiff] had difficulty with a particular call sign and ended up stating that he was not going to call/talk to that particular aircraft

(. . . continued)
[that] same goal" of full certification at the Memphis facility.  <u>Id.</u> at 12.  Plaintiff argues that this definition includes both transfers and new trainees, thus applying the same training program to both. This document does not appear to be attached to Plaintiff's submissions to the Court, however, and the Court is therefore unable to consider it.

[5] Defendant also contends that Plaintiff has failed to show that he and the other non-protected employees received similarly negative evaluations.  However, as discussed <u>supra</u> with respect to whether Plaintiff was "qualified" for the position, "a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case."  <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 574 (6th Cir. 2003). However, as discussed in this section, the Court need not decide this issue.

again because he could not get it right. Both OJTIs
and [Plaintiff's] supervisor felt that his continued
transposition of call signs, general lack of
awareness, and inability to keep pace with the traffic
had developed into a safety issue. . . . All members
of [Plaintiff's] training team stated that they did
not feel that additional hours would enhance his
ability to be successful.

(Ex. 15, dated March 7, 2003, Doc. 61, Attach. 6, at 2.)

In addition to the general problems cited in the Board's
decision, Defendant points to numerous specific mistakes on
Plaintiff's part during his training.[6]  These include specific
mistakes involving the use of the wrong call signs on several
different occasions, (Pl. Dep., Doc. 61, Attach. 2, at 148-49,
191-93), calling the wrong "sector," id. at 154-55, "losses of
separation," id. at 183-84, (Pl. Dep., Doc. 61, Attach. 3, at
212-14), instructing an aircraft to turn the wrong direction,
(Pl. Dep., Doc. 61, Attach. 2, at 189), failing to identify that
two airplanes were traveling at the same altitude, with the one
behind traveling faster than the one in front, (Pl. Dep., Doc.
61, Attach. 2, at 194-95), as well as interventions by the
trainers for other unspecified reasons.  (Pl. Dep., Doc. 61,
Attach. 3, at 206-207.)  Plaintiff's records demonstrated that

---

[6] Defendant points to these mistakes in its discussion of whether
Plaintiff established a prima facie case.  However, as discussed in
the section of this Order addressing the prima facie case, it is
inappropriate to consider the alleged basis for the termination in
determining whether the plaintiff has made out a prima facie case.
Rather, those mistakes are more appropriately considered in examining
whether a legitimate non-discriminatory reason existed for the
termination.  Therefore, the Court considers that discussion here.

he "need[ed] improvement" or needed "to step it up a notch,"
(Pl. Dep., Doc. 61, Attach. 2, at 159-61, 166-67, 191, 197-98),
and that his performance was "unsatisfactory." Id. at 174-77.

Defendant points to other evidence that bolsters its
proffered legitimate non-discriminatory reasons.  Plaintiff
testified that Jason Canton, the trainer who decided not to
certify Plaintiff on the only sector for which Plaintiff was not
certified, told Plaintiff that he was going to try to get
Plaintiff through this training process.  (Pl. Dep., Doc. 61,
Attach. 3, at 205, 261-62.)  Plaintiff passed certification on
all the other sectors, and Jason Canton certified him on four of
them.  (Pl. Dep., Doc. 61, Attach. 2, at 137-40.)[7]  Plaintiff
does not dispute these assertions.

Further, despite his statements to the contrary, Plaintiff
also stated that he did in fact receive twelve additional hours
of training after failing to certify.  (Pl. Dep., Doc. 61,
Attach. 3, at 225.)  This, Defendant implies, demonstrates a
willingness to permit Plaintiff to train further in order to
certify and an opportunity for Plaintiff to complete his
training.

---

[7] Plaintiff alleges that Mr. Canton "cited reasons for
[Plaintiff's] failure such as '[his] visual separation was legal, but
I didn't like it.'"  (Pl. Decl., Doc. 68-4, at 5.)  This does not
demonstrate discrimination.  Such comments are not objectively
discriminatory.

Additionally, while Plaintiff contends that a form was altered that showed that he received "SET" training that he did not receive, Defendant notes that Plaintiff testified that he did receive such training but did not know that that is what it was called until the Board session.  (Pl. Dep., Doc. 61, Attach. 3, at 204-205.)

For all these reasons, the Court finds that Defendant has offered a legitimate non-discriminatory reason for the termination of Plaintiff's training.

### 4. Pretext

In response, Plaintiff alleges that the reasons proffered by Defendant are pretextual.  The Sixth Circuit has held that

> [t]o raise a genuine issue of fact as to pretext and defeat a summary judgment motion under this position, the Plaintiffs must show that (1) the proffered reason had no factual basis, (2) the proffered reason did not actually motivate Defendants' action, or (3) the proffered reason was insufficient to motivate the action.

Adair v. Charter County of Wayne, 452 F.3d 482, 491 (6th Cir. 2006).  As the Sixth Circuit has held, "[u]nder the first and third methods . . . the fact finder may infer discrimination from the circumstances."  Cicero v. Borg-Warner Auto., Inc., 280 F.3d 579, 589 (6th Cir. 2002).  Under the second method, however Plaintiff "may not rely exclusively on his prima facie evidence, but instead must introduce some further evidence of discrimination."  Cicero, 280 F.3d at 589.  Under this second

showing, "[t]he plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." Manzer, 29 F.3d at 1084.

Plaintiff essentially attempts to demonstrate pretext under each type of showing.[8]  For the following reasons, Plaintiff fails to demonstrate that under any of these methods Defendant's proffered legitimate non-discriminatory reason is pretextual.

### a.  No Basis in Fact

Under the first showing, Plaintiff points to the absence of the video tape of his certification test.  (Pl. Decl., Doc. 68-4, at 5.)  He argues that the absence of this tape should give rise to an adverse inference.  In other words, it should be taken as evidence that the proffered reason—that Plaintiff did not perform well on his test—is not based in fact.

While it may be appropriate for a court to draw such an inference in some circumstances, it was the Board, not the trainers, that declined to view the video tape.  While Plaintiff alleges discrimination by the all-white Board, his claim is directed in substance at the trainers, not the Board, and Plaintiff has presented no other evidence of discrimination by

---

[8] While Plaintiff does not separate his arguments under each method of demonstrating pretext, the Court does so for ease of analysis.

the Board.[9]  The decision not to view the tape cannot constitute evidence of discrimination by the trainers.[10]

Plaintiff also alleges that he did not make all the mistakes that were attributed to him.  (Pl. Decl., Doc. 68-4, at 4.)  However, this assertion is unsupported by any specific reference to facts, and Plaintiff in fact admits that he made some of those mistakes.  (See Pl. Dep. at pages cited in discussion above.)[11]  For these reasons, Plaintiff has not demonstrated a genuine issue of material fact as to whether the legitimate non-discriminatory reason has a basis in fact.  To the contrary, the evidence demonstrates that there was a clear factual basis for the trainer's decision not to certify Plaintiff and for the Board's subsequent determination in reliance on the trainers' assessment.

---

[9] There are no similarly situated persons to whom Plaintiff can point in alleging discrimination by the Board.  Plaintiff has not alleged that other trainers recommended adverse action by the Board regarding other trainees.  The Board simply relied on the assessments of the supervisors or trainers in making its ultimate determination. The Board's refusal to view the tape, without more, is insufficient for a claim of discrimination by the Board, and that decision by the Board cannot be held against the trainers.

[10] In his declaration, Plaintiff alleges that "Defendant destroyed this video evidence." (Pl. Decl., Doc. 68-4, at 5.)  He provides no support for the allegation that Defendant destroyed the tape.

[11] It is unclear what Plaintiff hopes to demonstrate by pointing to evidence that he approached a supervisor after failing to certify and told the supervisor that he disagreed with the evaluation.  (Pl. Dep., Doc. 61, Attach. 1, at 68-70.)  The fact that the supervisor told Plaintiff that he could not do anything about the situation does not appear to prove anything, and Plaintiff does not demonstrate its probative value.

### b.  Did Not Actually Motivate the Termination

Plaintiff also contends that other discriminatory treatment outweighs the allegedly legitimate reason Defendant offers for the termination.  However, this additional evidence of pretext is likewise unavailing.  Plaintiff alleges that he was told he was not humble, or needed to be humbled.  (Pl. Dep., Doc. 61, Attach. 2, at 104-105.)  He was told he was "dragging his feet" in training.  (Pl. Dep., Doc. 61, Attach. 1, at 63.)  He was moved to a different training area after a white trainee transferred into the program.  Id. at 88.  None of these events, alone or taken together, demonstrate discrimination or outweigh the reason offered by Defendant.  In fact, they arguably weigh against Plaintiff by supporting the contention that he was not performing well in the training.  Plaintiff argues that his being moved to a different training area disadvantaged him and set him back, but he does not show that this was done only to him or that it was done to him because he was black.  Finally, the absence of the video tape evidence of his examination does not overwhelm other evidence of his inadequate performance during training and his examination, particularly since there is no evidence that the tape was deliberately misplaced in an attempt to sabotage Plaintiff's certification process.[12]

---

[12] Plaintiff also alleges that he was required to perform duties
(continued . . .)

c.  **Insufficient to Motivate Employment Action**

Finally, Plaintiff also alleges that he was held to a "higher standard" than the others and that his performance was therefore not any more deficient than that of the other trainees.  (Pl. Decl., Doc. 68-4, at 4-5.)  This assertion appears to refer to the allegations that he received less training than the other trainees.  Specifically, Plaintiff contends that he was denied "access to a simulated training computer exercise known as DYSIM, which simulates an individual trainee's specific area of difficulty and provides repetitive practice in that area."  Id. at 3.  He contends that "only the white employees were allowed to use DYSIM when they encountered difficulty in their training" and that "other trainees benefited from and were successful with their training due to their use of

---

(. . . continued)
relating to other positions at the facility.  (Pl. Decl., Doc. 68-4, at 5.)  He does not say with any specificity what those duties consisted of, and the allegation therefore has little weight.
    Plaintiff also alleges that he was told he was going to "wash out."  (Pl. Dep., Doc. 61, Attach. 1, at 72-75.)  However, Plaintiff does not cite the source of this comment.  Allegedly, the source was basing his or her information on another source, also anonymous.  Additionally, there is no evidence to suggest that this anonymous comment referred to racial discrimination.
    Plaintiff also alleges that a Ms. McVay, one of Plaintiff's training supervisors, told him that he and his wife were not going to "fit in."  (Pl. Dep., Doc. 61, Attach. 3, at 275.)  Plaintiff does not describe the meaning of this comment.  Nor is it clear that Ms. McVay said it to Plaintiff at all.  He testified in his deposition that Ms. McVay said it to his wife and others, and "almost to me—well, to me." Id. at 275.  He does not point to an affidavit or deposition in which his wife or "others" testify that Ms. McVay made this comment, and it therefore appears to be inadmissible hearsay.  In any event, without more, these comments alone do not demonstrate discrimination.

DYSIM." (Pl. Decl., Doc. 68-4, at 3.) However, the Board's decision addresses this very complaint, contextualizing the decision to cut off further training in the specific circumstances of Plaintiff's performance and evaluations.

Second, Plaintiff alleges that "[o]nly after I had utilized one hundred and twenty percent of my training hours did Defendant permit me to take a required certification test" even though "training regulations require a certification skill check upon attainment of one hundred percent of training hours." Id. at 4. He contends that "[r]equiring me to exhaust my training hours before attempting the certification test served to prevent me from obtaining any additional training in the event that I did not pass some portion of the certification test on my first attempt." Id. He contends that the white trainees were permitted to take the certification test early enough that they could receive more training if they needed. Id. However, it is clear from the Board's written decision that Plaintiff could have received additional training, but that the trainers determined that such additional training would not correct his deficiencies.

Third, Plaintiff alleges that he was "restricted to use of longitudinal separation only" while "[o]ther trainees were not restricted" in the same way. Id. at 4-5. There does not appear to be any basis upon which Plaintiff makes this comparison, and

it is unclear whether others were restricted in the same way.
This fact alone does not overwhelm the other evidence that a
reasonable determination was made that he did not and would not
meet the requirements for passing his training.  Further, he
does not assert that this specific type of training was relevant
to the sector that he failed.  For these reasons discussed
above, the Court GRANTS Defendant's Motion for Summary Judgment
as to Plaintiff's discrimination claim.[13]

**B.  Racial Harassment**

Plaintiff points to the same evidence discussed above to
demonstrate that he suffered harassment.  However, Plaintiff
appears to have abandoned the harassment claim, as he cites no
law in his Memorandum and does not allege that the conduct
created a hostile work environment.

In any event, for the same reasons discussed above,
Plaintiff has also failed to create a genuine issue of material
fact as to whether he was harassed.  The Court therefore GRANTS
Defendant's Motion for Summary Judgment as to Plaintiff's
harassment claim.

---

[13] Plaintiff also alleges that he was routinely reprimanded for
mistakes that other trainees were not reprimanded for.  (Pl. Resp.,
Doc. 68-1, at 18.)  However, he does not point to specific instances,
nor does he direct the Court to sworn testimony to this effect.  While
he directs the Court to his sworn declaration, that document does not
include this allegation.  The Court therefore disregards this
particular assertion.

Under Title VII, in order to make out a hostile-work-environment claim based on racially- or sexually-motivated harassment, "an employee must show that: (1) [he] was a member of a protected class; (2) [he] was subjected to unwelcome [racial or] sexual harassment; (3) the harassment complained of was based on [race or] sex; (4) the charged [racial or] sexual harassment created a hostile work environment; and (5) the employer is liable." Randolph v. Ohio Dep't of Youth Serv., 453 F.3d 724, 733 (6th Cir. 2006) (internal citations and quotations omitted); see also Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999) ("The elements and burden of proof are the same, regardless of the discrimination context in which the claim arises." (internal quotations omitted)).  A "totality-of-the-circumstances" test applies to the second and third prongs. Randolph, 453 F.3d at 733.  It is therefore inappropriate to consider "each event complained of in isolation."  Id. (referring to the fourth prong but also applying "totality-of-the-circumstances" test to the second and third prongs).

Plaintiff must present evidence "that the harassment created a hostile work environment, in that it was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Id. (internal citations and quotations omitted).  Both an objective

and subjective test must be met.  Randolph, 453 F.3d at 733.  As

the Sixth Circuit observed in Randolph,

> [r]ather than considering each event complained of in
> isolation, we must consider the totality of the
> circumstances in determining whether the harassment
> was sufficiently severe and pervasive.  Specifically,
> we must consider the frequency of the discriminatory
> conduct; its severity; whether it was physically
> threatening or humiliating, or a mere offensive
> utterance; and whether it unreasonably interfered with
> an employee's performance.  Simple teasing, offhand
> comments, and isolated incidents (unless extremely
> serious) will not amount to discriminatory changes in
> the terms and conditions of employment.

Id. (internal citations and quotations omitted).  It is, of

course, well-established that Title VII is not "a general

civility code."  Oncale v. Sundowner Offshore Serv., Inc., 523

U.S. 75, 81 (1998).

     None of the alleged comments amount to harassment under

this analytical framework.  None of the conduct was explicitly

discriminatory, threatening, or humiliating, and there is no

genuine issue of material fact as to this claim.  There is no

evidence that the alleged comments and treatment were based on

his race, or that they created a hostile work environment, as

they were directed at characteristics other than his race and

were mild in nature.  The work environment was not "permeated

with discriminatory intimidation, ridicule, and insult."  Harris

v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal

quotations omitted).  For all these reasons, the Court GRANTS

- 23 -

Defendant's Motion for Summary Judgment as to Plaintiff's claim
of harassment.

**IV.  Conclusion**

    For the foregoing reasons, the Court GRANTS Defendant's
Motion for Summary Judgment as to each of Plaintiff's claims.

    So ORDERED this 24th day of October, 2006.


                  /s/ Jon P. McCalla
                  JON P. McCALLA
                  UNITED STATES DISTRICT JUDGE